IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAMAR WHATLEY (#Y17653), ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 22 C 3792 |
| ) | |
| MARK WILLIAMS, Warden, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Lamar Whatley has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction and sentence in the Circuit Court of Cook County for attempted first degree murder, aggravated battery, and unlawful use or possession of a weapon by a felon (UUWF). Before his trial, Whatley challenged on Fourth Amendment grounds law enforcement's seizure of the handgun that he was charged with possessing and using to shoot the two victims, Dana Harvey and Jarrod Wright, at a birthday party. The state trial judge denied the motion after an evidentiary hearing. Whatley's case proceeded to a bench trial on his UUWF charge and a severed jury trial on his attempted first degree murder and aggravated battery charges. The trial judge found Whatley guilty of UUWF in the severed bench trial, and the jury found him guilty of two counts of attempted first degree murder and two counts of aggravated battery. The jury also found that Whatley had "personally discharged a firearm proximately causing great bodily harm." Resp., Ex. 2 at R708. The trial judge merged Whatley's UUWF and

aggravated battery convictions with his attempted murder convictions and sentenced Whatley to two consecutive 33-year prison terms, which included a 25-year statutory enhancement based on the jury's finding that Whatley caused great bodily harm. His conviction and sentence were affirmed on appeal. *People v. Whatley*, 2020 IL App (1st) 163179-U, 2020 WL 1952306.

In his habeas corpus petition, Whatley challenges the effectiveness of both his trial and appellate counsel; the denial of his motion to suppress the handgun; the jury instructions given at his trial; the severity and constitutionality of his prison sentence; and the constitutionality of his UUWF conviction under the Second Amendment. The Court takes the relevant facts from the state appellate court's decision, which are presumed correct under 28 U.S.C. § 2254(e)(1).

## Background

### 1. The shooting

In August 2014, Whatley was in a relationship with Nakia Wright. Nakia[1] lived at 6958 South Throop Street. Whatley owned a Ford Thunderbird.

On August 21, 2014, Nakia was hosting a birthday party outside her home. Several people were outside playing cards and drinking, including the victims: Harvey, a long-time friend, and Wright, her cousin. At some point that night, Whatley came to Nakia's house, and he and Nakia proceeded to have a long conversation inside. When Whatley left, he asked Nakia to leave with him. When Nakia told Whatley she did not want to leave, he became upset. Whatley left around 9:00 or 10:00 p.m. Five to ten

---

[1] For clarity, the Court refers to Ms. Wright as "Nakia" and her cousin, Jarrod Wright, as "Wright."

minutes later, Whatley pointed a handgun out of the driver's side window of his Thunderbird—which was parked near 6958 Throop Street—fired several shots at the crowd of partygoers, and drove away. Harvey was struck in his left shoulder, and Wright was struck in his side. Between 10:00 p.m. and 10:20 p.m., officers received a call for assistance regarding the shooting. As a result of that call, officers proceeded to 16827 South Head Avenue—Whatley's address—and found Whatley seated in the driver's seat of the Thunderbird, which was parked on the street. Officers identified Whatley, placed him in handcuffs, and searched the vehicle. During the search, a handgun was found in the engine compartment. The handgun contained four spent shells.

**2.     The motion to suppress**

Before trial, Whatley moved the trial court to suppress the handgun found in his car on the night of the shooting. As indicated earlier, the trial judge held an evidentiary hearing on the motion.

At the hearing, Hazel Crest police detective Reggie Cotton testified that on August 21, 2014, he received information regarding a drive-by shooting. The caller provided Whatley's name, address, and the make and model of his vehicle, a Ford Thunderbird. When Detective Cotton arrived at the location where Whatley was reported be living, he found Whatley seated in the driver's side seat of the Thunderbird, identified him as the person sought for the shooting, ordered him out of the car, and placed him in handcuffs. Soon after, Chicago police officers arrived, and Whatley was transferred to their custody. Officers from Chicago and Hazel Crest searched the Thunderbird. Chicago police officer John Burke found the handgun in the engine

compartment, behind the left headlight. An evidence technician was called to recover the gun, and the Thunderbird was towed.

Whatley argued that his Fourth Amendment rights were violated because the officers searched his vehicle without consent or a warrant. The trial court denied the motion to suppress. The court concluded that the officers had probable cause to search Whatley's vehicle because he was wanted for a drive-by shooting that had just occurred within an hour of the search, and he was found sitting in the same car that was reported to be involved, outside the home reported to be his address. The court also concluded that the search was a lawful inventory search because the officers were going to tow the car for further investigation and therefore had the right to inventory its contents before doing so.

3. **The trial**

Whatley's case proceeded to trial in October 2016. At trial, Nakia, Harvey, and Wright all testified regarding the incident consistent with the facts as described above. Nakia and Harvey each also gave a videotaped statement to the police, and Wright gave a handwritten, signed statement. The same officers who testified at the suppression hearing testified at the trial, largely repeating the testimony they had given during the suppression hearing. A gunshot residue expert, the evidence technician that inventoried the handgun, and other police detectives also testified. Whatley did not present any defense witnesses.

As noted earlier, the jury found Whatley guilty of the attempted first degree murder of Harvey and Wright and found that he personally discharged a firearm that proximately caused great bodily injury to Harvey and Wright. The jury also found

Whatley guilty of two counts of aggravated battery, and the trial court found Whatley guilty of UUWF.

**4.     The sentencing**

For purposes of sentencing, Whatley's aggravated battery and UUWF charges were merged into the attempted first degree murder charges. In Illinois, attempted first degree murder is a Class X felony with a sentencing range of six to thirty years. 720 ILCS 5/8-4(c)(1); 730 ILCS 5/5-4.5-25(a). Section 8-4(c)(1)(D) of the Illinois Criminal Code imposes a sentencing enhancement for a defendant who discharges a firearm in committing attempted first degree murder. The statute provides:

> [A]n attempt to commit first degree murder during which the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person is a Class X felony for which 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court[.]

*Id.* Thus, the minimum sentence for each count of attempted first degree murder in which Whatley personally discharged a firearm that proximately caused great bodily harm was thirty-one years. The trial court was required to impose consecutive sentences because "[o]ne of the offenses for which [Whatley] was convicted was first degree murder or a Class X or Class 1 felony and [Whatley] inflicted severe bodily injury." 730 ILCS 5/5-8-4(d)(1). The combined minimum sentence in Whatley's case was therefore 62 years. The trial court imposed a sentence of 66 years in prison.

**5.     State appellate proceedings**

A more detailed recounting of the various appeals and postconviction motions filed by Whatley—and the arguments advanced in each—can be found in Williams's response to Whatley's petition, at pages six to eleven.  In brief, Whatley first appealed his convictions and sentence to the Illinois Appellate Court.  The Illinois Appellate Court affirmed the convictions and sentences.  He then filed two petitions for leave to appeal (PLA) to the Illinois Supreme Court, which the court denied; a petition for mandamus relief to the Cook County Circuit Court, also denied; a petition for relief from judgment to the Circuit Court, likewise denied; two postconviction petitions to the Circuit Court, which the court denied; an unsuccessful appeal from the denial of his postconviction petitions; another PLA to the Illinois Supreme Court, which the court denied; a second petition for relief from judgment, likewise denied; a motion for reconsideration of the denial of his second petition for relief from judgment, also denied; an appeal from the denial of his motion for reconsideration, the resolution of which is unclear from the record; three state habeas corpus petitions to the Circuit Court, all denied with the appellate process also now concluded; a motion for leave to file a successive postconviction petition, which the Circuit Court denied; an appeal from the denial of that motion, rejected as untimely; and a motion to set aside or reduce his sentence, which remains pending before the Circuit Court.  Whatley filed the present habeas corpus petition on June 14, 2022.

## Discussion

A district court may issue a writ of habeas corpus on behalf of a person in custody under a state court judgment if he is in custody in violation of the Constitution or

laws or treaties of the United States. 28 U.S.C § 2254(a). A court may not grant habeas corpus petition, however, unless the state court's judgment resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law or that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Id*. § 2254(d)(1)-(2). A state court decision is contrary to federal law if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law. *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000). In assessing "unreasonable application," a court asks whether the state court's application of clearly established federal law was objectively unreasonable. *Id*. at 409.

      The Court agrees with Williams that construing liberally Whatley's habeas corpus petition and the accompanying materials he submitted, he asserts ten claims: (1) his trial counsel was ineffective for not advising him regarding his sentencing exposure during plea negotiations, thus leading him to turn down an offer of twenty-one years; (2) the trial court erred when it denied his motion to suppress the handgun because police found it after conducting a search unsupported by probable cause; (3) his 66-year sentence violates the Eighth Amendment and the Illinois Constitution's proportionate penalties clause; (4) his trial counsel was ineffective for not arguing that police violated the Illinois Constitution by arresting him based on an investigative alert; (5) his trial counsel was ineffective for not objecting to venue because the jury pool was tainted in some unspecified way; (6) his UUWF conviction violates the Second Amendment; (7) the twenty-five year sentence enhancement for causing great bodily harm by discharging a firearm violates his constitutional protection

7

against cruel and unusual punishment, double jeopardy, and his right to equal protection, as well as several provisions of the Illinois Constitution; (8) his postconviction appellate counsel was ineffective for failing to raise certain issues; (9) the trial court improperly instructed the jury; and (10) the trial court erred when it imposed the twenty-five year firearm enhancement because that specific offense was not part of his charging instrument.

1.   **Procedurally defaulted claims**

Williams contends that claims 1, 4, 5, 6, 7, 8, 9, and 10 are procedurally defaulted, as Whatley did not present them through a complete round of Illinois's appellate review process. The Court agrees.

A habeas corpus petitioner must "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This means that a petitioner must "invoke one complete round of the State's established appellate review process." *Id.* "In Illinois, which has a two-tiered appellate review system, a petitioner must present a claim at each level of the state court system, either on direct appeal or in post-conviction proceedings." *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013). The Court thus turns to whether Whatley has, as Williams argues, procedurally defaulted many of the claims he presents in his habeas corpus petition.

The only claims that Whatley presented through one complete round of state court review are his claims that the trial court erred when it denied his motion to suppress the handgun (claim 2) and that his sentence is too severe (claim 3). Whatley did not present any of his remaining claims through one complete round of review on

8

appeal from the denial of his initial postconviction petition or any of his other collateral challenges. As Williams correctly notes, "the only claim he raised in the Illinois Appellate Court during [a full] round was a claim that he does not now raise: that trial counsel was ineffective for not investigating evidence of self-defense." Resp. at 16. The Court therefore concludes that the claims Whatley has asserted in his habeas corpus petition are procedurally defaulted.

A habeas corpus petitioner can overcome a procedural default if he demonstrates both cause for and prejudice from the default or that a miscarriage of justice will occur if the Court fails to address the merits (i.e., the petitioner is actually innocent of the crime). *See, e.g.*, *House v. Bell*, 547 U.S. 518, 536 (2006); *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). The Seventh Circuit has observed that "[t]he actual innocence gateway is narrow." *Gladney v. Pollard*, 799 F.3d 889, 896 (7th Cir. 2015). "To support a colorable claim of actual innocence the petitioner must come forward with 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Gomez v. Jaimet*, 350 F.3d 673 (7th Cir. 2003) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). The Supreme Court has emphasized that the standard articulated in *Schlup* is demanding and allows review of a procedurally defaulted claim only in the "extraordinary" case. *House*, 547 U.S. at 538. Whatley has not submitted any new evidence at all. Thus he cannot invoke the "actual innocence" exception to sidestep his procedural default.

Nor has Whatley established cause or prejudice, both of which would be required to excuse his procedural default. Whatley appears to assert that his postconviction

appellate counsel's failure to raise certain issues in his postconviction petition constitutes cause. It is true that "ineffective assistance of counsel constitutes cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 479 (1986). But that principle applies only to cases where counsel was "*constitutionally* ineffective under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Murray*, 477 U.S. at 479 (emphasis added). And Williams is correct that there is no Sixth Amendment right to counsel—and thus no claim for ineffective assistance of counsel—on collateral review. *Crutchfield v. Dennison*, 910 F.3d 968, 973-74 (7th Cir. 2018); *see also Davila v. Davis*, 582 U.S. 521, 529 (2017) ("in proceedings for which the Constitution does not guarantee the assistance of counsel at all, attorney error cannot provide cause to excuse a default").

In sum, claims 1, 4, 5, 6, 7, 8, 9, and 10 have been procedurally defaulted, and Whatley has no basis upon which to overcome the default.

**2.    Non-cognizable claims**

In addition to being procedurally defaulted, the Court agrees with Williams that certain of Whatley's claims are non-cognizable on federal habeas corpus review.

A federal court may not, on federal habeas corpus review, reexamine a state court's determination of an issue of state law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In claims 3 and 7 Whatley argues, in part, that his sentence violates the Illinois Constitution. In claim 9, he argues that, as a matter of Illinois law, the trial court erred—in what way exactly is unclear—when it instructed the jury.[2] These are

---

[2] The Court notes that the jury instruction mentioned by Whatley—Illinois Pattern Instruction 3.15—was not actually given to the jury that determined his guilt at trial.

state law issues. Accordingly, neither claim is properly reviewable in the present proceeding.

Claim 8 is non-cognizable because habeas corpus relief is not available for claims of ineffective assistance of post-conviction appellate counsel. *See Martinez v. Ryan*, 566 U.S. 1, 17 (2012) ("[Section] 2254(i) precludes [a habeas petitioner] from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief[.]'"). Similarly, claim 6 is non-cognizable because it challenges the propriety of Whatley's UUWF conviction. He is not "in custody" on that conviction in view of the merger of the UUWF conviction with the first-degree murder convictions. In short, Whatley is not "in custody pursuant to a judgment of a State court" for UUWF, as required to pursue a petition under section 2254(d)(1). *See Murchison v. Pfister*, No. 18 C 1450, 2019 WL 7194119, at *3 (N.D. Ill. Dec. 26, 2019) (petitioner was not "in custody" pursuant to conviction that merged into other convictions during sentencing).

In sum, claim 3 is non-cognizable to the extent it asserts issues implicating the Illinois Constitution, and claims 7, 8, and 9 are not only procedurally defaulted but also non-cognizable.

### 3. Fourth Amendment claim

In his second claim, Whatley challenges the state court's decision overruling his motion to suppress evidence. Specifically, he contends that the that the police lacked probable cause to support a warrantless search of his vehicle, thus violating his rights under the Fourth Amendment. A federal court may not grant a habeas corpus petition on Fourth Amendment grounds, however, if the state court provided an opportunity for full and fair litigation of the Fourth Amendment claim. *Stone v. Powell*, 428 U.S. 465,

494 (1976); *Monroe v. Davis*, 712 F.3d 1106, 1112-13 (7th Cir. 2013); see also, *Cabrera v. Hinsley*, 324 F.3d 527, 530-31 (7th Cir. 2003) ("Absent a subversion of the hearing process, we will not examine whether the judge got it right"). Whatley had such an opportunity if the state court was apprised of the Fourth Amendment claim and its factual basis; carefully and thoroughly analyzed the facts; and applied proper constitutional caselaw to the facts. *See Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005).

These requirements are met in Whatley's case. First, Whatley fully apprised the state trial and appellate courts of his claim and its basis when he litigated his motion to suppress before the trial court and contested the denial of the motion on appeal. Second, the Illinois Appellate Court conducted a thorough analysis of the facts derived from the record. When a state court's Fourth Amendment analysis is based on factual determinations fairly supported by the record, then it carefully and thoroughly analyzed the facts for purposes of *Stone v. Powell*. *Miranda*, 394 F.3d at 998. Here, the appellate court discussed in detail the evidence derived from the hearing on the motion to suppress, and it related those facts faithfully in a way that the record supported.

Finally, the state appellate court applied the appropriate governing constitutional principles to the facts in the record. The court assessed the well-established automobile exception to the Fourth Amendment's warrant requirement and concluded that it was applicable to the search in Whatley's case. The court's analysis was in every respect thorough and detailed. The court found that:

> The evidence presented at the suppression hearing established that defendant was detained while in his vehicle outside his address within an hour of the drive-by shooting in which he had been named as a suspect. As detailed above, defendant was immediately identified as the individual

>who fired multiple gunshots at partygoers at 6958 South Throop Street
>and injured multiple individuals. The Hazel Crest and Chicago police
>officers located and arrested defendant very shortly after the shooting.

Resp., Ex. 8 at 22. Thus, applying *People v. Contreras*, 2014 IL App (1st) 131889, ¶ 28, the court reasonably agreed with the trial court's conclusion that the officers had probable cause to believe that Whatley's vehicle contained a firearm used in the shooting that had just occurred. And even though it had already found the search lawful under the automobile exception to the warrant requirement, the court went on to analyze whether the search was lawful as a property inventory search. It found that it was.

For these reasons, the Court concludes that the state trial and appellate courts provided Whatley a full and fair hearing on his Fourth Amendment claim. Accordingly, federal review of the claim on its merits is barred under *Stone v. Powell*.

4. **Eighth Amendment claim**

Finally, Whatley argues that that his sentence is excessive and violative of the Eighth Amendment due to the sentencing judge's claimed failure to consider mitigating factors and because it qualifies as a *de facto* life sentence barred by *Miller v. Alabama*, 567 U.S. 460 (2012).

Under current Eighth Amendment jurisprudence, a sentence for a term of years runs afoul of the Constitution only if it is grossly disproportionate. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). This standard lacks precise boundaries, but for purposes of habeas corpus review, it warrants overturning a sentence only in the "exceedingly rare and extreme case." *Id.* (internal quotation marks omitted).

In Whatley's case, the appellate court stated that it would not overturn the

sentence unless it was "'inherently barbaric' or [] disproportionate to the offense." *Whatley*, 2020 IL App (1st) 163179-U, 2020 WL 1952306, at *72 (quoting *Graham v. Florida*, 560 U.S. 48, 59 (2010)). It also analyzed Whatley's sentence under the proportionate penalties clause of the Illinois Constitution, as Whatley predominately framed his challenge to his sentence in that manner. The appellate court stated that "'[t]he legislature's discretion in setting criminal penalties is broad, and courts generally decline to overrule legislative determinations in this area unless the challenged penalty is clearly in excess of the general constitutional limitations on this authority.'" *Id.* at *73 (quoting *People v. Sharpe*, 216 Ill. 2d 481, 487, 839 N.E.2d 492, 497 (2005)). The court went on to conclude that Whatley was far from "the least culpable offender imaginable," *id.* at *78 (internal citations omitted), as "he fired a gun repeatedly at a crowd of partygoers . . . [and] [e]ven after the first pulls of the trigger failed to fire a bullet, [Whatley] continued to pull the trigger and fired six gunshots at multiple people, striking three individuals." *Id.* at *80. Thus, it held, "[w]hile we appreciate [Whatley's] mitigating factors, including his lack of a violent criminal history and work history, [he] has failed to overcome the presumption that the statutes were applied constitutionally in this case." *Id.* at *83.

   Nor did the appellate court unreasonably apply federal law in upholding Whatley's sentence. The sentencing judge imposed a sentence for a term of years within the limits authorized by statute. When that occurs, a federal court should be hesitant in overturning a sentence that has effectively been approved by the state legislature. *See Hutto v. Davis*, 454 U.S. 370, 374 (1982). Under the circumstances, the sentence in this case, which was just two years higher than the mandatory minimum

14

of 31 years imprisonment per count, was not grossly disproportionate. Moreover, the appellate court reasonably determined that—to the extent Whatley was relying on *Miller* to contend that his sentence was an unconstitutional *de facto* life sentence that shocked the conscience—*Miller* was not applicable to him, as he was thirty-one years old at the time of the offense.

In sum, the state appellate court did not act unreasonably in overruling Whatley's challenge to his sentence.

**5.    Certificate of appealability**

When a district court enters a final judgment that dismisses a prisoner's habeas corpus petition, it must issue or deny a certificate of appealability (COA). "[F]ederal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners" in the absence of a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To obtain a COA, the petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A court should issue a COA if it determines that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). When a district court denies a claim on procedural grounds, the petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

The Court's determinations that Whatley's claims are procedurally defaulted,

non-cognizable, and/or barred by *Stone v. Powell* or section 2254(d) are not fairly debatable. Neither is the Court's decision that Whatley has failed to present evidence of cause and prejudice or actual innocence that could overcome his procedural default. The Court therefore declines to issue a certificate of appealability.

## Conclusion

For the reasons stated above, the Court directs the Clerk to enter judgment denying Lamar Whatley's petition for a writ of habeas corpus. The Court declines to issue a certificate of appealability.

Date: June 12, 2023

_____
MATTHEW F. KENNELLY
United States District Judge